**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

PAUL SONICO,

Plaintiff,

v.

CITY OF BRAWLEY, *et al.*,

Defendants.

Case No. 3:25-cv-00515-BAS-LR

**ORDER GRANTING SUMMARY JUDGMENT (ECF No. 41)**

Before the Court is a motion for summary judgment ("Motion") submitted by Defendants City of Brawley, John Tang, Shirley Bonillas, Jimmy Duran, Juan Morales. (ECF No. 41.) For the reasons below, the Court **GRANTS** Defendants' Motion. (*Id.*)

Although the Court finds the Claims are not preempted or precluded by Section 301 of the LMRA, the Court **GRANTS** Defendants' Motion as to Plaintiff's Section 215(a)(3) of the FLSA and Section 1102.5(b) of the California Labor Code claims. (*Id.*)

Since the Court has granted Defendants' Motion against all of Plaintiff's claims in the case, the Clerk of the Court is **ORDERED** to enter judgment accordingly and to **CLOSE** to case.

## I. BACKGROUND

Plaintiff Paul Sonico was a Police Officer with the City of Brawley. (First Am. Compl. ("FAC") ¶ 3, ECF No. 5.) Defendants are the City of Brawley, Commander John Tang ("Tang"), Human Resources Administrator Shirley Bonillas ("Bonillas"), Chief of Police Jimmy Duran ("Duran"), Commander Juan Morales ("Morales"), and Does 1 through 10. Plaintiff was a member of the Brawley Public Safety Employees Association ("BPSEA"), which had a Memorandum of Understanding ("MOU") with the City of Brawley. (Pl.'s Opp'n to Mot. ("Opp'n") 7:5–8, ECF No. 45.) The MOU states, "Range Master: 2.5 percent (2.5%) of base pay premium to any employee filling a Range Master Position." (*Id.*)

On June 18, 2024, Plaintiff was informed that he had been selected for the position of Range Master with the Department, but he did not receive the expected 2.5% pay increase. (FAC ¶ 1.) On July 24, 2024, Plaintiff's counsel sent an email to Defendant Bonillas and non-Party City Manager Salcido ("Salcido") regarding the unpaid wages, citing the MOU and state and federal law. (*Id.* ¶ 2.) On July 26, 2024, Plaintiff was removed from the Range Master position. (*Id.* ¶ 4.) After July 26, 2024, Plaintiff received two written reprimands in August 2024 and a negative employment evaluation in March 2025. (*Id.* ¶¶ 6, 9.) Plaintiff was ultimately terminated from employment with the City of Brawley on April 16, 2025. (*Id.* ¶ 10.)

Plaintiff brings two causes of action: (1) retaliation in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 215(a)(3), against all Defendants and (2) retaliation in violation of the California Labor Code, Cal. Lab. Code § 1102.5, against Defendant City of Brawley. Plaintiff claims that Defendants retaliated against him by removing him from the Range Master position, issuing written reprimands and a negative employment evaluation, and ultimately terminating him from his position. (FAC ¶¶ 2–11.)

Defendants moved for summary judgment on the basis that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and, in the alternative, that Plaintiff could not prove retaliation by any Defendant. (*See* Mot.) Plaintiff opposed both grounds. (*See* Opp'n.) Defendants replied. (*See* Defs.' Reply in Supp. of Mot. ("Reply"), ECF No. 51.)

## II. LEGAL STANDARD

Summary judgment is appropriate on "all or any part" of a claim if there is an absence of a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can present evidence that negates an essential element of the nonmoving party's case or demonstrate that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proof at trial. *Id.* at 322–23. Once the moving party establishes the absence of triable issues, the burden shifts to the nonmoving party to show disputed issues remain. *Celotex*, 477 U.S. at 322. The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

When ruling on a summary judgment motion, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987) (citing *Matsushita*, 475 U.S. at 587). Summary judgment is therefore not appropriate "where

contradictory inferences may reasonably be drawn from undisputed evidentiary facts." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir. 1980).

**III. ANALYSIS**

Defendants move for summary judgment on two primary grounds: (1) Plaintiff's claims are preempted and precluded by Section 301 of the LMRA (*see* Mot. 6:12–10:6); and (2) Plaintiff fails to satisfy the elements of a prima facie case for employment retaliation under either Section 215(a)(3) of the FLSA or Section 1102.5(b) of the California Labor Code (*see* Mot. 10:7–16:2).

**A. Preemption and Preclusion Under Section 301 of the LMRA**

Section 301 of the LMRA preempts state law claims that are either: (1) founded directly on rights created by a collective bargaining agreement ("CBA") or (2) "substantially dependent on analysis of" the CBA. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1060 (9th Cir. 2007); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861–62 (9th Cir. 1987). Conversely, a claim is not preempted if it can be resolved without interpreting the CBA—even if the same set of facts also happens to involve the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10 (1988) ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for Section 301 preemption purposes.").

Next, though the constitutional doctrine of preemption under the Supremacy Clause of the U.S. Constitution only applies to federal statutes *preempting* state law claims, courts have also contemplated whether Section 301 of the LMRA can *preclude* federal law claims where they seek to enforce rights created by a CBA, as opposed to rights created by a federal statute (including the FLSA). *See Nexus Pharms., Inc. v. Cent. Admixture Pharmacy Servs., Inc.*, 48 F.4th 1040, 1045 (9th Cir. 2022) ("The Supremacy Clause is the source of preemption doctrine, which invalidates state laws that are contrary to federal statutes."); *compare Flaherty v. Kanaway Seafoods, Inc.*, No. 3:22-CV-00155-SLG, 2023

WL 7671516, at *6 (D. Alaska Nov. 15, 2023), *aff'd*, No. 23-4223, 2025 WL 66044 (9th Cir. Jan. 10, 2025) (holding plaintiff's FLSA claims for failure to pay overtime were not precluded by Section 301 of the LMRA because "the rights of employees arising out of the collective bargaining agreement are separate and distinct from those arising out of a statute such as the FLSA."), *with Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union*, 23 F.4th 836, 844 (9th Cir. 2022) (holding plaintiff's claims under the federal Racketeer Influenced and Corrupt Organizations Act were precluded by Section 301 of the LMRA because they required analyzing whether billed hours were charged in accordance with the CBA—which meant the resolution of plaintiff's claims "substantially depend[ed] on analysis of a CBA.").

**1. Whether Parties Entered into a Collective Bargaining Agreement**

A collective bargaining agreement under Section 301 of the LMRA is a "contract between an employer and a labor organization." 29 U.S.C. § 185(a). The LMRA's definition of an "employer" excludes any "State or political subdivision thereof." *Id.* At least one court within the Ninth Circuit has held that the City and County of San Francisco, as a "political subdivision" under Section 152(2) of the LMRA, fell outside the LMRA's definition of "employer" under Section 301 of the LMRA. *Gray v. San Francisco Deputy Sheriffs Ass'n*, No. C 13-04340 WHA, 2013 WL 6351029, at *2 (N.D. Cal. Dec. 5, 2013).

In addition, the Ninth Circuit has held that Section 301 of the LMRA also does not cover employees of states or political subdivisions. *Ayres v. Int'l Bhd. of Elec. Workers*, 666 F.2d 441, 444 (9th Cir. 1982) ("We decline to extend the coverage of section 301(a) to public employees without a clearer indication of congressional intent.").

Here, Plaintiff seeks to bring FLSA and California Labor Code claims against Defendant City of Brawley and employees of the City of Brawley (Defendants Tang, Bonillas, Duran, and Morales). (FAC ¶¶ 13–31.) Similar to the City and County of San Francisco in *Gray*, City of Brawley is a political subdivision of the State. *Gray*, 2013 WL 6351029, at *2. Further, similar to defendants in *Ayres*, the Court finds that Tang, Bonillas, Duran, and Morales are public employees. Thus, none of the Defendants in this case are

"employer[s]" under Section 301 of the LMRA, and any written agreements between a labor organization and Defendants (including the MOU) cannot constitute a CBA.

The Court therefore agrees with Plaintiff that, without demonstrating that Defendants constitute "employer[s]" under Section 152(2) of the LMRA, Plaintiff's Section 1102.5(b) of the California Labor Code retaliation claim cannot be preempted and Plaintiff's Section 215(a)(3) of the FLSA retaliation claim cannot be precluded by Section 301 of the LMRA. (*See* Opp'n 12:9–17:22.)

**2. Whether Plaintiff's Retaliation Claims Involve Interpreting a CBA**

Even assuming Defendants could constitute "employer[s]" under the LMRA, Plaintiff's FLSA and California Labor Code retaliation claims are—as a matter of law—not founded upon a contract.

The Ninth Circuit has explained that a retaliation claim concerns the "respective actions of the employer and employee" and that "this inquiry will not depend on interpretation of the CBA." *Brown v. Brotman Med. Ctr., Inc.*, 571 F. App'x 572, 575 (9th Cir. 2014). Rather, the analysis is factual—and concerns the motivations behind the Defendants' conduct and application of the Defendants' procedures. *See Lingle*, 486 U.S. at 407 (whether the defendant had a non-retaliatory reason to terminate plaintiff is a "purely factual inquiry that does not turn on the meaning of any provision of a CBA"); *Torres v. Walt Disney Parks & Resorts US, Inc.*, No. 8:25-CV-00148-DOC-ADS, 2025 WL 2631547, at *7 (C.D. Cal. May 7, 2025) (a plaintiff's retaliation claim is based on "whether Defendants acted with retaliatory intent—a factual question that does not turn on the meaning of the CBA."); *see also Ku v. Argent Hotel Mgmt., LLC*, No. 20-CV-05026-LB, 2020 WL 5836506, at *4 (N.D. Cal. Oct. 1, 2020) ("[T]he claims here turn on resolution of the employer's motives, not on an interpretation of the CBA, even if those terms identify the terms of employment.").

Additionally, Plaintiff's FLSA claim is materially distinct from that of the plaintiff in *Vadino v. A. Valey Engineers*, 903 F.2d 253 (3d Cir. 1990), a Third Circuit case Defendants rely on in arguing that Plaintiff's FLSA claim involves a term of an MOU

providing a 2.5% base pay premium to those holding the position of Range Master, and so should be precluded by Section 301 of the LMRA. (Mot. 6:13–21, 7:1–4.) Setting aside that Vadino is nonbinding, it does not apply here because the claim in that case was for unpaid wages and overtime pursuant to a CBA. 903 F.2d at 255. In contrast, here, Plaintiff's claims revolve around retaliatory actions taken by Defendants (*e.g.*, termination of employment) in response to Plaintiff lodging a formal complaint. (FAC ¶¶ 13–31.) Put differently, though Plaintiff's formal complaint sought the 2.5% unpaid premium owed under the MOU, Plaintiff's retaliation claims involve assessing Defendants' intent to retaliate against Plaintiff when taking actions such as terminating Plaintiff from employment in response to the complaint (regardless of the legitimacy of the complaint's substance).

In sum, because Plaintiff's FLSA and California Labor Code retaliation claims are founded upon federal and state statutory provisions, Plaintiff's retaliation claims do not involve an obligation under the MOU that would require interpreting the terms of the MOU. Thus, even if the MOU could be construed as a CBA, Plaintiff's state and federal retaliation claims could not be preempted or precluded by Section 301 of the LMRA.

* * *

For the reasons above, the Court **DENIES** Defendants' motion for summary judgment to preempt Plaintiff's Section 1102.5(b) of the California Labor Code retaliation claim under Section 301 of the LMRA and to preclude Plaintiff's Section 215(a)(3) of the FLSA claim under Section 301 of the LMRA. (ECF No. 41.)

### B. Section 215(a)(3) of the FLSA Retaliation (Defendants City of Brawley, Bonillas, Tang, Duran, and Morales)

FLSA § 215(a)(3) ("Section 215(a)(3)") prohibits discharging or discriminating against an employee because the employee filed "any complaint or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). A plaintiff bringing a claim for retaliation under the FLSA must show that "(1) he engaged in an

activity protected by the FLSA; (2) he suffered adverse action by the employer[1] subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action." *Hollis v. R&R Rests., Inc.*, 159 F.4th 677, 688 (9th Cir. 2025) (citation modified).

### 1. Protected Activity

"For the purposes of retaliation claims under the FLSA § 215(a)(3), 'protected activity' refers to the actions taken by employees to assert their rights under the FLSA, specifically, filing a complaint." *Sonico v. City of Brawley*, No. 3:25-cv-00515-BAS-LR, 2025 WL 1811829, at *2 (S.D. Cal. July 1, 2025) (citations omitted). The complaint must include more than amorphous expressions of dissatisfaction with wages and hours; it must "specifically alleg[e] a violation of the FLSA." *Lambert v. Ackerley*, 180 F.3d 997, 1007 (9th Cir. 1999); *see id.* ("[N]ot all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)."). It must be "sufficiently clear and detailed for a reasonable employer to understand it . . . as an assertion of rights protected by the statute." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011). "This standard can be met, however, by oral complaints, as well as by written ones." *Id.*

Parties do not dispute that Plaintiff engaged in a protected activity under the FLSA—complaining about not receiving the 2.5% Range Master pay raise in an email sent by Plaintiff's attorney on July 24, 2024 (Opp'n, Ex. F, ECF No. 45-1) ("July 24 Email"). *See Sonico*, 2025 WL 1811829, at *3 (finding the plaintiff's complaint to his employer about missing pay, and specifically referencing the FLSA, constitutes a "good-faith effort" to assert rights that fall within the scope of the FLSA).

---

[1] The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency[.]" 29 U.S.C. § 203(d). Here, given that all Defendants act in the interest of the City of Brawley through their employment, the Court finds (and Parties do not dispute) that all Defendants are "employer[s]" within the definition of the FLSA. For the same reason, non-Defendant employees of the City of Brawley (*e.g.*, Salcido, Blackstone, Cano, Garcia) are also "employer[s]" under the FLSA.

Though Plaintiff flagged to Defendant Morales that Plaintiff's onboarding paperwork did not include a provision for the 2.5% Range Master premium pay (Sonico Dep. 64:3–25, ECF No. 45-1, Ex. A), inquired about receiving the pay from non-Party Clerk Martha Garcia on June 18, 2024 (Sonico Dep. 73:20–74:21), and contested Defendant Bonillas' single-position interpretation of the MOU in asserting his own entitlement to the premium (Sonico Dep. 80:13–81:8), none of these instances involved Plaintiff explicitly asserting rights under the FLSA or complaining of a statutory violation.

Thus, the Court considers only whether Defendants took adverse employment actions in retaliation for Plaintiff's July 24 Email.

**2. Adverse Employment Action**

Adverse employment actions may include any decision by an employer affecting "compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1) (Title VII); *see, e.g., Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 847 (9th Cir. 2004). Any actions taken by Defendants prior to Plaintiff's protected activity (*i.e.*, July 24 Email) cannot be considered an adverse employment action. *Timmons v. United Parcel Serv., Inc.*, 310 F. App'x 973, 975 (9th Cir. 2009) (holding that protected activities occurring subsequent to alleged retaliatory acts cannot support a causal link between the protected activity and the adverse employment action).

Here, Parties do not dispute that Plaintiff suffered adverse employment actions committed by Defendants following the July 24 Email, including removal from the Range Master position, withholding of the 2.5% Range Master pay premium, disciplinary reprimands, and negative performance evaluations. (*See* Opp'n 8:5–10:14.)

**3. Causal Connection**

Parties focus their dispute on the third prong of Section 215(a)(3)—which requires assessing the causal connection between the protected activity (July 24 Email) and the adverse actions suffered by Plaintiff.

A plaintiff can demonstrate a causal link by showing that retaliation was a substantial or motivating factor for Defendants' adverse employment actions. *See Avila v. Los Angeles*

*Police Dep't*, 758 F.3d 1096, 1101 (9th Cir. 2014). Importantly, FLSA retaliation claims require demonstrating "adverse actions would not have been taken 'but for' the protected activities." *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996). Direct and circumstantial evidence may be used to show that protected activity was a substantial factor in the adverse action. *See Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir. 2003) (finding that plaintiff may satisfy the "substantial factor" standard in numerous ways, either by timing or through statements by the employer showing its disapproval of the protected activity or by showing that the employer's proffered reasons for the adverse action were pretextual).

Temporal proximity between the protected activity and adverse employment action may support an inference of causation, especially "where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). However, "timing alone will not show causation in all cases." *Id.* Moreover, an employer's awareness of the protected activity is required to supply evidence of a causal link between the protected activity and the adverse action. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982); *Bolos v. Waldorf=Astoria Mgmt., LLC*, No. CV 23-00104 JMS-KJM, 2025 WL 3485379, at *5 n.10 (D. Haw. Dec. 4, 2025) (applying *Cohen* to plaintiff's FLSA retaliation claim) ("An employer's knowledge of protected activity is necessary but not sufficient to show a causal link between that activity and the alleged adverse action."). "It is '[e]ssential to a causal link . . . that the employer was aware that the plaintiff had engaged in the protected activity.' " *Cohen*, 686 F.2d at 796; *see also Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 70 (2000) (same for state law retaliation claims).

Here, Plaintiff makes a general assertion that "each Defendant was aware of Mr. Sonico complaining about not receiving range master pay." (Opp'n 8:19–22.) Yet, the Court agrees with Defendants that Plaintiff fails to present any underlying evidence that each individual Defendant was aware of the July 24 Email when he or she committed adverse employment actions against Plaintiff. (Mot. 11:4–6.)

**i. Defendant Bonillas**

First, only Defendant Bonillas and non-Party Salcido were actual recipients of the July 24, 2024 email. (*See* Mot. 12:6–11; Ex. F, ECF No. 45-1.) Defendant Bonillas' purportedly retaliatory conduct—communicating that the MOU authorized a 2.5% Range Master pay raise for only one member to Salcido, who then told Plaintiff he was not entitled to the Range Master pay raise—occurred "more than 2 weeks before the 7/24/2024 'formal complaint.'" (Mot. 3:6–9, 12:12–13:6.) Plaintiff does not demonstrate that Defendant Bonillas performed any retaliatory conduct during or after the July 24 Email (including supporting other Defendants' retaliatory conduct). Indeed, the July 24 Email itself demonstrates that, after being contacted by Plaintiff's attorney, Bonillas even *agreed* that the City of Brawley owed Plaintiff payment for Range Master duties performed between June 18, 2024, and July 25, 2024 (the day before Plaintiff's termination from the Range Master position). (Ex. F.)

Thus, it is undisputed that there is no causal connection between Defendant Bonillas' initial denial of Range Master pay and the July 24 Email, and the Court **GRANTS** Defendants' Motion on Plaintiff's FLSA claim against Defendant Bonillas.

**ii. Defendants Tang, Duran, and Morales**

Moreover, though Plaintiff has demonstrated that the remaining Defendants' purportedly retaliatory conduct took place after the July 24 Email, the record does not establish any evidence that Defendants Tang, Duran, or Morales had any awareness of the July 24 Email itself—as opposed to general awareness that Plaintiff sought Range Master pay. Put differently, the Court finds that Plaintiff has not raised triable issues that the remaining Defendants were each aware of Plaintiff's protected activity at the time of their retaliatory conduct.

Regarding Defendants Tang and Duran, Parties do not dispute that Defendant Tang emailed Defendant Duran that on July 9, 2024—prior to the July 24 Email—he informed Plaintiff about Plaintiff's ineligibility for the 2.5% benefit. (Opp'n 7:26–8:9.) However, Plaintiff does not present any evidence that Defendants Tang or Duran had any awareness

of the July 24 Email wherein Plaintiff's attorney claimed withholding the 2.5% benefit violated the FLSA. Therefore, Plaintiff has not demonstrated that Defendants Tang and Duran had awareness of the July 24 Email when they committed their purportedly retaliatory acts, including: (1) Defendant Tang communicating the removal of Plaintiff from the Range Master position on July 26, 2024 (FAC ¶ 4, Mot. 5:22–24, ECF No. 45-1, Ex. F); (2) Defendant Tang ordering non-Party Sergeant Cano to take disciplinary actions against Plaintiff on August 19 and 26, 2024 (Opp'n 10:12–14; Sonico Dep. 52:6–23; ECF No. 45-1, Exs. L, M); (3) Duran not authorizing 2.5% premium pay for Plaintiff's Range Master position after Duran became City Manager on August 6, 2024 (Opp'n 20:6–10; ECF No. 45-1, Ex. B, 57:15–58:6, Duran Dep.); and (4) Duran approving Plaintiff's employment termination on April 16, 2025 (Opp'n 22:7–12; Mot. 13:21–23).

Likewise, though Defendant Morales onboarded Plaintiff as Range Master and demonstrated awareness that Plaintiff was concerned about receiving the 2.5% Range Master pay premium at that time, there is no evidence that Morales was aware of the July 24 Email. Thus, there is no evidence that Morales was aware of the July 24 Email when retaliating through allegedly ordering non-Party Sergeant Garcia to issue disciplinary memoranda and a negative performance evaluation against Plaintiff. (Mot. 13:13–23; Opp'n 20:15–28; ECF No. 45-1, Ex. P, Performance Appraisal Report.)

During oral argument on Defendants' Motion, Plaintiff's counsel argued that Exhibits G, I, and J attached to Plaintiff's Opposition demonstrate that Defendants Tang, Morales, and Duran had awareness of the July 24 Email. (ECF No. 61 (referencing ECF No. 45-1, Exs. G, I, J).) First, Exhibit G is a notice of Range Master removal (dated July 26, 2024) sent from Commander John Tang to Plaintiff Sonico, stating that the Department could not add a fourth Range Master. (Ex. G.) The notice does not reference the July 24 Email or Plaintiff's invocation of the FLSA at all. (*Id.*) Second, Exhibit I is an email from non-Party Salcido to Defendants Jimmy Duran, John Tang, and Shirley Bonillas on July 25, 2024, expressing approval to support back pay for Plaintiff Sonico. (Ex. I.) Similarly, the email does not reference the July 24 Email or Plaintiff's invocation of the FLSA at all.

(*Id.*) Third, Exhibit J is a letter (dated July 24, 2024) from Commander John Tang to Jimmy Duran summarizing events regarding the Range Master assignment. (Ex. J.) The full list of events is excerpted directly from Exhibit J below:

> June 4, 2024- Commander Blackstone issued a memorandum to all sworn personnel regarding an upcoming addition to the range master program.
>
> June 18, 2024-Officer Paul Sonico was selected as an addition to the range master staff.
>
> June 19, 2024-Officer Paul Sonico emailed Martha Garcia regarding his pay incentive increase.
>
> June 19, 2024- Martha Garcia forwarded the email to Commander Blackstone and I.
>
> June 21, 2024- I sent Shirley Bonillas an email requesting that Officer Sonico be added to the range staff and to include the incentives.
>
> July 3, 2024- Shirley Bonillas sent an email regarding the BPSEA MOU and her interpretation of the benefit as only allowing a singular employee.
>
> July 9, 2024- I sent you (Chief Duran) an email regarding an in-person conversation I had with Officer Sonico, advising him of his ineligibility for the 2.5% benefit increase.
>
> July 10, 2024: The same email sent to Chief Duran was forwarded to Shirley Bonillas and Sylvia Vizcarra regarding placing a hold on the pay increase request, as the MOU only covered a single employee.

Conspicuously missing from the list is the email sent from Sonico on July 24, 2024. Though the letter in Exhibit G references attached "supporting documents", those supporting documents are not included in the record—so the Court cannot discern whether the July 24 Email was included with the letter. (*Id.*)

Since Plaintiff has not presented sufficient evidence to establish triable issues as to Defendants Tang, Duran, and Morales' awareness of the July 24 Email, the Court finds that Plaintiff cannot demonstrate a "causal connection" between their actions and the relevant "protected activity" (the July 24 Email). *See Cohen*, 686 F.2d at 796. Therefore, the Court **GRANTS** Defendants' Motion on Plaintiff's FLSA claim against Defendants Tang, Duran, and Morales.

**iii. Defendant City of Brawley**

Because an employer acts only through its agents, Plaintiff's FLSA retaliation claim against City of Brawley must rest on adverse actions taken by employees—including individual Defendants Bonillas, Tang, Duran, Morales, and other non-Defendant City personnel—that were causally connected to Plaintiff's protected activity (*i.e.*, the July 24 Email). *Cf. Poland v. Chertoff*, 494 F.3d 1174, 1183 (9th Cir. 2007) ("[T]he biased

subordinate's retaliatory motive will be imputed to the employer if the subordinate influenced, affected, or was involved in the adverse employment decision.").

As discussed *supra* § III.B.3.i–ii, Plaintiff does not evince individual Defendants' actions against Plaintiff were related to the July 24 Email. Plaintiff also fails to demonstrate that non-Defendant employees—including Blackstone (who participated in the termination decision) (Mot. 13:13–14; Opp'n 22:10–11), Cano (who issued the August discipline) (Mot. 13:8–10; Opp'n 10:12–18), or Sergeant Garcia (who authored the evaluation and later discipline) (Mot. 13:13–23; Opp'n 10:19–11:14)—had any awareness of the July 24 Email. Further, the one non-Party Defendant who was demonstrably aware of the July 24 Email—Salcido—is not purported to have taken any adverse actions against Plaintiff.

Since Plaintiff has failed to raise triable issues that the aforementioned Defendants' adverse actions (or other City of Brawley employees' adverse actions) occurred "but for" Plaintiff's July 24 Email (*i.e.*, a causal link exists between protected activities and adverse actions), *see Knickerbocker*, 81 F.3d at 911, the Court also finds that Plaintiff has failed to raise triable issues that any adverse actions attributable to Defendant City of Brawley occurred "but for" Plaintiff's July 24 Email as well.

Thus, the Court also **GRANTS** Defendants' Motion on Plaintiff's FLSA claim against Defendant City of Brawley.

* * *

Since the Court finds no triable issues remain as to Plaintiff's FLSA claim against each Defendant, the Court **GRANTS** Defendants' Motion on Plaintiff's FLSA claim in its entirety.

### C. Section 1102.5(b) of the California Labor Code Retaliation (Defendant City of Brawley)

To establish a prima facie case of retaliation under Cal. Lab. Code § 1102.5(b) ("Section 1102.5(b)"), a plaintiff must show that: (1) he engaged in protected activity; (2) his employer thereafter subjected him to an adverse employment action; and (3) there was

a causal link between the two. *Soukup v. Law Offices of Herbert Hafif*, 39 Cal. 4th 260, 287–88 (2006) (citing *Morgan*, 88 Cal. App. 4th at 69).

The first prong of Section 1102.5(b) (protected activity) requires showing an employee's disclosure of information to an employer that the employee "has reasonable cause to believe" describes "a violation of . . . local, state, or federal rule or regulation." Cal. Lab. Code § 1102.5(b). Here, Plaintiff asserts that Defendants violated Section 215(a)(3) of the FLSA in the text of the July 24 Email—and thus, the July 24 Email constitutes a protected activity under Section 1102.5(b). Again, since Plaintiff did not allege a violation of law when airing other grievances to Defendants, *supra* § III.B.1, the Court finds that the July 24 Email is also the only protected activity under Section 1102.5(b) at issue in this action. Parties do not dispute this point.

Similarly, Parties do not dispute the second prong of Section 1102.5(b) (adverse employment action)—which entails that Plaintiff suffered adverse employment actions after Plaintiff's July 24 Email. Based on the same adverse employment actions described *supra* § III.B.2, the Court finds that Plaintiff has satisfied this element.

The third prong of Section 1102.5(b) (causal link) requires that the plaintiff's protected activity be a "contributing factor" in the defendant's adverse employment action. *Cf. McEntee v. Santa Clara Cnty. Off. of Educ.*, No. 25-CV-08008-PCP, 2026 WL 2109533, at *3 (N.D. Cal. May 11, 2026) (citing *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 718 (2022)) ("[U]nlike Title VII and FEHA, § 1102.5(b) requires only that the protected activity be a 'contributing factor' to the adverse employment action.").

Though proving causation requires a lower threshold under Section 1102.5(b) of the California Labor Code than Section 215(a)(3) of the FLSA (*i.e.*, protected activity "contributing factor" to adverse action vs. adverse action would not have occurred "but for" protected activity, respectively), Plaintiff still does not raise triable issues as to whether Plaintiff's protected activity was a "contributing factor" to the City of Brawley's adverse employment actions. Namely, Plaintiff's failure to present evidence that any City of

Brawley employees who were aware of the July 24 Email also committed adverse employment actions (*supra* § III.B.3) suggests the July 24 Email was not even a "contributing factor" to the adverse employment action. *Lawson*, 12 Cal. 5th at 718; *see also Torre v. R&L Carriers Shared Servs., LLC*, No. EDCV231225JGBJCX, 2023 WL 6190829, at *5 (C.D. Cal. July 31, 2023) (dismissing plaintiff's Section 1102.5(b) claim where "[p]laintiff has not alleged a single fact to suggest that [d]efendant was even aware of any attempt at 'protected whistleblowing.' ").

Thus, the Court also **GRANTS** Defendants' motion for summary judgment as to Plaintiff's Section 1102.5(b) of the California Labor Code cause of action.

## IV. CONCLUSION

For the reasons above, the Court **GRANTS** Defendants' Motion. (ECF No. 41.) Since the Court has granted Defendants' Motion against all of Plaintiff's claims in the case, the Clerk of the Court is **ORDERED** to enter judgment accordingly and to **CLOSE** to case.

**IT IS SO ORDERED.**

**DATED: September 15, 2026**

Cynthia Bashant

**Hon. Cynthia Bashant, Chief Judge**
**United States District Court**